UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Prince Jones,

                Plaintiff,                  **MEMORANDUM OPINION AND ORDER**

vs.                                            Civil No. 07-3009ADM/JSM

Darryl R. Boerger, individually and in his official capacity; Chad L. Degree, individually and in his official capacity; John M. Harrington, St. Paul Chief of Police, individually and in his official capacity; and the City of St. Paul,

                Defendants.

---

Brendan R. Tupa, Esq., Entrepreneurs & Free Markets, PLC, Minneapolis, MN, appeared for and on behalf of the Plaintiff Prince Jones.

Portia Hampton-Flowers, Esq., Assistant City Attorney, St. Paul, MN, appeared for and on behalf of the Defendants.

---

## I. INTRODUCTION

On August 26, 2008, the undersigned United States District Judge heard oral argument on the Motion for Summary Judgment [Docket No. 11] brought by Defendants Darryl R. Boerger ("Boerger"), Chad L. Degree ("Degree"), St. Paul Chief of Police John M. Harrington ("Harrington"), and the City of St. Paul (the "City"). In his Complaint [Docket No. 1], Plaintiff Prince Jones ("Jones") alleges Boerger and Degree used excessive force in violation of 42 U.S.C. § 1983 and the Fourth Amendment, and alleges claims of assault and battery, false arrest, and intentional infliction of emotional distress under Minnesota law. Jones also alleges Harrington and the City engaged in negligent hiring, training, and supervision of Boerger and

Degree, and the City developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in the City of St. Paul in violation of 42 U.S.C. § 1983.  During oral argument on the motion, Jones voluntarily dismissed all claims against Harrington and the City, as well as the intentional infliction of emotional distress claim against the individual officers.  The remaining counts are the § 1983 claim against the individual officers, as well as the assault and battery and false arrest claims.  For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## II.  BACKGROUND[1]

On January 27, 2006, Jones received a ride home from work from Deshaune Poe ("Poe"). Tupa Aff. [Docket No. 17] Ex. H (Jones Aff.) ¶ 2.  Jones and Poe stopped in front of Jones' house where Jones placed a call to his wife on his cell phone. Id. ¶ 3.  At the same time, approximately 9:00 p.m., Officers Boerger and Degree were on patrol driving on Central Avenue in St. Paul, an area known to the officers for having a high crime rate. Hampton-Flowers Aff. [Docket No. 14] Ex. D (Degree Depo.) at 7-8; Hampton-Flowers Aff. Ex. F (Boerger Depo.) at 8.  Jones was in the passenger seat of Poe's car and saw the police car drive past him in the opposite direction.  Jones Depo. at 54.  As the officers passed Poe's car, they noticed exhaust coming from the car and the driver looking down into his lap manipulating something with his hands.  Degree Depo. at 9; Boerger Depo. at 7.  Based on their training and experience, the officers concluded this behavior was consistent with someone wrapping a marijuana cigarette. Boerger Depo. at 7; Degree Depo. at 9.  After the license plate check of the car revealed the

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

registered owner had a suspended license and that the description of the owner matched the driver's appearance, the officers performed a U-turn and pulled behind Poe's car. Id. at 9-10.

At this point, recollection of events by the officers and Jones and Poe diverge. Giving Jones the favorable inferences he is entitled to on summary judgment, the contested facts will be recited from the evidence he has produced. Jones recalls seeing the police car and a bright, white light consistent with a spotlight. Jones Depo. at 41, 54, 58. After seeing the light, Jones got out of the car and began to walk towards his house. Jones Depo. at 58. There was ankle high snow on the ground, and ice on the sidewalk. Id. at 41; Degree Depo. at 23; Boerger Depo. at 11. Jones avers he did not hear any verbal commands from the officers.[2] Jones Aff. ¶ 7. Jones at one point claimed he was then knocked unconscious immediately after exiting the car, but later stated he had begun to walk up the walkway in front of his house before he was struck. Id. at 58, 59. He testified he does not know who or what struck him. Id. at 41. Poe avers that Jones was "tackled" by a St. Paul police officer immediately after exiting the car. Tupa Aff. Ex. G (Poe Aff.) ¶¶ 4, 5. Boerger admits to pushing Jones causing him to slip on the ice, hit the left side of his head on the sidewalk, and lose consciousness. Boerger Depo. at 14. The officers radioed for medical help, and Jones received treatment at United Hospital. Id. at 15; Jones Depo. at 62. The officers searched Jones and Poe and found marijuana on Jones and in Poe's car. Hampton-Flowers Aff. Ex. E (Incident Report).

---

[2] Both Boerger and Degree testified they identified themselves as police and commanded Jones to get back in the car. Degree Depo. at 19; Boerger Depo. at 11. Neither Jones nor Poe has contested this fact, Jones merely avers, and the Court accepts as true for the purposes of summary judgment, that he did not hear these commands.

### III.  DISCUSSION

Jones asserts that Boerger and Degree acted under color of state law to deprive him of his right to be free from excessive force under the Fourth and Fourteenth Amendments of the United States Constitution and that the officers violated state law by committing an unlawful arrest and assault and battery.  Compl. [Docket No. 1] ¶¶ 15-20.

**A.     Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     42 U.S.C. § 1983 Claims Against Boerger**

"In order to survive a motion for summary judgment under § 1983, the plaintiff must raise a genuine issue of material fact as to whether (1) the defendants acted under color of state law, and (2) the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right."  Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002).  Boerger, acting as a police

officer, does not dispute he acted under the color of state law. He argues, however, that if there was any wrongful conduct, the doctrine of qualified immunity protects him from liability.

The standard for assessing qualified immunity is one of "objective legal reasonableness." Winters v. Adams, 254 F.3d 758, 766 (8th Cir. 2001) (citing Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982)). The first question is whether, viewing the facts in the light most favorable to the party asserting the injury, the officer's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). If the first question is answered in the affirmative, the second question is whether the right violated was clearly established. Id. To determine whether a particular right was clearly established, it must be viewed in a particularized, relevant sense: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. "Whether a given set of facts entitles the official to summary judgment on qualified immunity grounds is a question of law." Greiner v. City of Champlin, 27 F.3d 1346, 1352 (8th Cir. 1994). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that the defendant should have taken the disputed action." Winters, 254 F.3d at 766.

A reasonable officer in Boerger's position would not believe it was unlawful to tackle a suspect who appears to be disregarding commands to stop. Boerger was in the midst of an investigative stop in a high crime area after dark. The occupants of the vehicle were engaged in activity the officers concluded was consistent with illegal drug use. The officers pulled behind

the car and turned on the spotlight. Jones exited the car, and regardless of whether Jones heard the officers' command to stop,[3] he continued to move away from the officers. A reasonable officer in Boerger's position could assume that Jones was ignoring his commands to stop. On the icy sidewalk, Boerger pushed Jones resulting in the "tackle" Poe described. This minimal level of force used to apprehend Jones would be appropriate to contain an uncooperative suspect.

Jones cites two cases to support his claim that Boerger's tackle constituted excessive force, but neither involves facts similar to this one. In Straundlund v. Hawley, the plaintiff asserted an excessive force claim when he was tackled from behind by an officer after the plaintiff inquired as to why his nephew was being detained by the police. 2007 WL 984268 at 4 (D. Minn. 2007). The court found there were no grounds for the officer to believe the plaintiff was a threat and denied the officer's motion for summary judgment. Jones' case differs from Straundlund because of the probable cause Boerger had for believing Jones may have been involved in a crime, and Boerger's reasonable belief Jones was ignoring his commands to stop. In the second case Jones cites, the inmate plaintiff was tackled and pepper sprayed without warning by a correctional officer. Johnson v. Blaukat, 453 F.3d 1108, 1113 (8th Cir. 2006). The plaintiff in Blaukat was tackled with no warning but there was a history of animosity between

---

[3] After Defendants submitted their Motion for Summary Judgment relying on the testimony of Boerger and Degree that they commanded Jones to stop, Jones submitted to the Court an affidavit stating that he did not hear any verbal commands from either officer. Jones Aff. ¶ 7. Neither Jones' nor Poe's affidavits contest whether these commands were given. Rule 56(e) of the Federal Rules of Civil Procedure states, "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Since Jones had an affirmative duty to contest whether the officers made their commands and did not, the Court will assume the officers made these commands and Jones did not hear them.

the officer and the plaintiff.  Here, there is no evidence of any prior relationship at all between the parties.  Further, Boerger told Jones to stop and that command was not obeyed.  Accordingly, Boerger is entitled to qualified immunity on the excessive force claim.

**C.     False Arrest Claim Against Boerger**

There is some confusion about the nature of Jones' false arrest claim.  It is unclear from the face of the Complaint whether Jones raised this claim under § 1983 or Minnesota law.  In the Complaint, Count One, the excessive force claim, is clearly labeled as a § 1983 cause of action.  Count Two, the assault and battery claim, is under state law.  Count Three, the false arrest claim, lacks the § 1983 label of Count One and follows the state law claim of assault and battery.  The Defendants addressed the false arrest claim under a § 1983 analysis in their Memorandum in Support of Summary Judgment.  Defs.' Mem. in Supp. for Mot. for Summ. J. [Docket No. 13] at 14-16.  In the section of his reply brief dealing with joint and several liability, Jones recites the standard for false imprisonment and official immunity under Minnesota law.  Because Jones now seems to assert the false arrest as a state law claim, the Court will address this claim under Minnesota law.

"The action for the tort of false imprisonment or false arrest protects the personal interest in freedom from restraint of movement.  The restraint may be imposed by the assertion of legal authority, and if an arrest is made without proper legal authority, it is a false arrest . . . ." Lundeen v. Renteria, 224 N.W.2d 132, 135 (Minn. 1974).  Jones asserts there was no legal justification for his arrest.  He argues that the arrest after "merely stepping out of his vehicle in front of his home in the Frogtown neighborhood" without engaging in wrongdoing creates a fact question inappropriate for summary judgment.  Pl.'s Mem. in Opp'n of Summ. J. [Docket No.

16] at 10. The uncontested facts do not support this contention. In his testimony, Jones admits he did more than merely exit his car. He saw the spotlight and began to walk away from the officers. Moreover, Boerger had probable cause, as documented above, to arrest a non-compliant suspect. Although the discovery of marijuana on Jones' person after he was apprehended may not be considered in the probable cause determination, it does show the officers' suspicions were confirmed. For these reasons, Boerger is entitled to summary judgment on this claim.

**D.  Assault & Battery Against Boerger**

Jones also alleges Boerger's use of force constitutes assault and battery. Boerger argues his actions are protected by the doctrine of official immunity. "Official immunity is an immunity from suit and the question may be appropriately resolved on summary judgment." Reuter v. City of New Hope, 449 N.W.2d 745, 751 (Minn. Ct. App. 1990). "Official immunity 'prevents a public official charged by law with duties which call for the exercise of his judgment or discretion' from being held personally liable for damages, unless the official has committed a willful or malicious act." Mumm v. Mornson, 708 N.W.2d 475, 490 (Minn. 2006) (citing Elwood v. County of Rice, 423 N.W.2d 671, 677 (Minn. 1988) (quoting Sulsa v. State, 247 N.W.2d 907, 912 (Minn. 1976))). "Official immunity enables public employees to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." Mumm, 708 N.W.2d at 490. An official immunity analysis requires courts to determine (1) whether the conduct at issue involves ministerial or discretionary duties, and (2) if the duties are discretionary, whether the officials acted willfully or maliciously. Id.

A ministerial duty is "one that is 'absolute, certain, and imperative, involving merely the

execution of a specific duty arising from fixed and designated facts.'" Anderson v. Anoka Hennepin Indep. Sch. Dist. 11, 678 N.W.2d 651, 656 (Minn. 2004) (citations omitted). "In contrast, a duty is discretionary if it involves 'more individual professional judgment that necessarily reflects the professional goal and factors of a situation.'" Mumm, 708 N.W.2d at 490-91 (citation omitted). The Minnesota Supreme Court "has suggested, as a general matter, that police charged with the duty to prevent crime and enforce the laws are not purely 'ministerial officers' in that many of their duties are of an 'executive character involving the exercise of discretion.'" Elwood, 423 N.W.2d at 678 (citations omitted). Malice, in the immunity context, "means 'the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right.'" Kari v. City of Maplewood, 582 N.W.2d 921, 924 (Minn. 1998) (citations omitted).

Under this analysis, Boerger is entitled to official immunity. At the time of the incident, he was an on-duty police officer conducting an investigatory stop. By exercising his professional judgment in the context of preventing crime and enforcing the laws, Boerger was engaged in a discretionary duty satisfying the first requirement for official immunity. There is also no indication Boerger acted with malice. As indicated above, Boerger did not willfully violate a known right but instead used the amount of force a reasonable officer confronted with a non-complying suspect might feel was necessary. Accordingly, Boerger is entitled to official immunity on the assault and battery claim.

**E.     The Claims Against Degree**

Jones also alleges that Degree used excessive force in violation of § 1983, and committed false arrest and assault and battery. Even though there is no evidence that Degree used any force

9

or contributed to Jones' injuries in any way, Jones argues liability extends to Degree through a theory of joint and several liability. He cites the Minnesota Apportionment of Damages statute for the proposition that if both Boerger and Degree engaged in a common scheme or plan that resulted in his injury, or if they committed an intentional tort, they are each jointly and severally liable for the entire award. Minn. Stat. § 604.02, subd. 1. While Jones misunderstands the nature of this statute as an apportionment mechanism rather than a source of liability, his argument appears to be that Degree is liable because he acted as part of a common scheme or plan with Boerger to use excessive force and engage in the intentional torts of assault and battery and/or false arrest.

     First, this Court can find no legal support for Jones' novel theory the § 1983 excessive force claim would qualify as an intentional tort under the Minnesota statute. Second, Jones can cite no evidence in the record that would indicate Degree and Boerger planned or schemed to commit assault and battery or false arrest. At oral argument, Jones' counsel highlighted the fact Degree and Boerger were on patrol together at the time of the incident but failed to indicate how this fact was evidence of a common plan or scheme. Since Jones has presented no evidence Degree engaged in any wrongdoing or engaged in a common plan or scheme with Boerger, Jones' claims against Degree fail.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Docket No. 11] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


     s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  September 22, 2008.